140 So.2d 758 (1962)
Nelvin Pickett BRYANT, Individually and as the Tutrix of the Minor, Wiley Benjamin Bryant, Plaintiff-Appellee,
v.
Odis S. JOHNSON et al., Defendants-Appellants.
No. 9681.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1962.
Rehearing Denied May 9, 1962.
*759 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
Robert W. Coyle, Ferris & Achee, Shreveport, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
This suit was brought by Mrs. Melvin Pickett Bryant, individually and as tutrix of her minor son, Wiley Benjamin Bryant, against Odis S. Johnson, Alex A. Laurent and Aetna Casualty & Surety Company, to recover damages for the wrongful death of Wiley Washington Bryant, plaintiff's deceased husband and father of said minor. The case was first tried by a jury which could not agree on a verdict and a mistrial was declared. Before the conclusion of the trial, because of limited insurance coverage, plaintiff filed a remittitur of her claims except to the extent of $6,370.00, together with interest and costs. Subsequent to the jury trial, by joint motion of all parties, the order for a jury trial was rescinded and the case submitted to the district judge, who rendered judgment in favor of plaintiff. Defendants have appealed.
The deceased, Wiley Washington Bryant, was killed instantly as a result of an automobile accident which occurred on Louisiana Highway No. 507, approximately one mile south of its intersection with Louisiana Highway No. 155, in Red River Parish. At the time of the accident, about 10:30 A.M. on May 25, 1959, a fairly heavy rain was falling.
The highway is a black-topped road, eighteen feet in width, with the center line thereof being marked by a broken white line. The shoulders of the highway are six feet wide on either side. Immediately to the north of the place of the accident, Louisiana Highway No. 507 runs generally in a northerly direction, and as it extends from that point to the scene of the accident, it makes a curve of approximately ninety degrees, with the length of the curve being about 1,900 feet. Beginning at the north end of this curve and extending in an arc to the east, a slight depression is encountered in the highway surface, and then an incline of about 23 feet in elevation occurs over a distance of approximately 725 feet. The crest of the hill is more or less level for a distance of 100 feet and it is within this segment that the contact between the two involved vehicles was made. The curve is banked along the entire 725 feet with the road at the point of impact being about 12 inches lower on the inside of the curve.
Involved in the accident were two vehicles, a Ford sedan owned and driven by Wiley Washington Bryant, and a two and one-half ton Ford truck, equipped with dump body, loaded with five yards of gravel. The truck was owned by Odis S. Johnson and driven by Alex A. Laurent. It was insured by Aetna Casualty & Surety Company. The Bryant vehicle was proceeding along the curve from the east to the north and its lane of traffic was on the inside of the curve. The gravel truck was traveling in the opposite direction. The impact between the vehicles occurred near the summit of the hill and each vehicle came to rest following the collision in the ditch on its respective side of the road. Witnessing the occurrence of the collision were only the drivers of the automobile and truck. Bryant was killed instantly but Laurent's injuries were not of a serious nature.
The accident was investigated by State Trooper Billy Don Morgan, who related his findings at the scene of the collision and testified as to an interview with Laurent several hours after the accident, while the latter was in the hospital. W. L. Hunter, the operator of a wrecker which went to the scene of the collision, testified as to skid *760 marks and other physical evidence which he observed. Certain photographs taken by Joe Gay disclosed the damage sustained by each of the vehicles.
In stating her cause of action, plaintiff alleges that negligence on the part of Laurent was the sole proximate cause of the accident, this due to his driving in such a manner that as he approached the locus of impact a portion of the truck blocked Bryant's side of the road to such an extent that he could not pass and, although he applied his brakes, he could not avoid a head-on collision. The petition charges that Laurent was at fault in failing to maintain a proper lookout and in failing to have his vehicle under proper control. In the main, however, appellee relies upon the evidence as showing that the driver of the truck was traveling on the wrong side of the road prior to and at the time of the above described collision. The appellants deny this assertion and aver that the truck driver was not negligent in any manner, but that Bryant was traveling at an excessive rate of speed and was operating his automobile with the left portion thereof over into Laurent's lane of travel. Alternatively, contributory negligence of the deceased is urged.
Trooper Morgan, Hunter and Gay testified of the presence of skid marks made by the Bryant automobile which began in Bryant's lane of travel and extended 30 to 40 feet to the point of impact where the left front wheel had crossed into Laurent's lane of travel a distance of some six or eight or twelve inches. These witnesses observed glass, skid marks on the pavement and other debris near the center of the road, largely in the truck's lane. The State Trooper testified that when he interviewed Laurent in the hospital the latter told him the truck was moving at forty miles per hour and that the last thing he remembered was a yellow car coming at him.
Photographic evidence discloses that the front of both vehicles, particularly on the left side of each, was subjected to severe damage. The picture of the Ford automobile shows that its left side was torn away or crushed from its left front rearward to the door. The same nature of injury is disclosed to have been sustained by the truck.
The judge a quo assigned written reasons for judgment which indicate a decision was reached only after a most careful consideration of the issues of fact and law presented in the case. He concluded the speed of neither the truck nor the automobile had any causal connection with the collision and noted an absence of controversy as to the fact that at the moment of impact the left wheels of the Bryant automobile were at least six to eight inches over the center line of the highway into the truck's traffic lane, and also that just before the impact, and some forty feet to the south of the locus thereof, the Bryant automobile was wholly within its proper traffic lane. A summary of his findings are to the effect that Laurent was mistaken in his testimony as to the position of the right dual wheel of the truck at the moment of impact and that at that time the truck was in a position over the center line of the highway, and so much so the frontal impact was applied to the whole left half of the Bryant automobile, as disclosed by the photographs filed in evidence; that the testimony of Laurent must be rejected for its variance from his pleadings; and, finally, that Bryant was free from contributory negligence as the emergency created was solely occasioned by the truck being across the center of the road, this because the road was banked and wet and he was required to apply his brakes, which act resulted in his vehicle skidding across the center line.
Appellants argue that the trial court committed error through its failure to apply the rules of evidence with respect to the burden of proof, and that had it done so it should have found that the sole proximate cause of the accident was the negligence of the deceased.
As hereinabove pointed out, the only eye witness surviving the accident is Laurent.
*761 Resolution of actionable negligence must come from the testimony of Laurent and physical evidence as disclosed by Trooper Morgan, Hunter, the garageman, and Gay, the photographer. These witnesses testified as to the presence of glass and other matter observed near the center of the highway, but mostly in the lane of traffic in which the truck was traveling. Trooper Morgan testified the tire marks of Bryant's car crossed the center line three or four feet south of the point of impact. He states that the tire marks of the left front wheel extended about six inches beyond the center line. Hunter likewise testified as to these marks commencing about forty feet from the impact, but says that they extended a foot over the center line. Gay testified that the tire marks went eight inches over into Laurent's lane and extended for about thirty or thirty-one feet. An engineering map depicting the elevation and cross view of the road disclosed the accident occurred almost at the crest of the hill and at the middle of the curve. Near that point for a distance of 100 feet the course of the road was level and almost straight, as may be discerned by reference to the plat
The attack upon Laurent's testimony emphasized the difference in his testimony from the allegations in his petition, wherein it is alleged he first observed the encroachment of the automobile when it was from 100 to 150 feet distant and turned sharply to the right. Also a contradiction is pointed out between the testimony of Laurent and Trooper Morgan, who stated that Laurent informed him, while in the hospital an hour or so after the accident, that he was driving the truck about 40 miles per hour. When he testified, Laurent said he first noticed the imminent danger from Bryant's car which was crossing into his lane when it was but thirty or forty feet away and he did not have time to react or turn to the right. He also said he did not remember whether he had, in fact, told the State Trooper that he was going forty miles per hour or not. We do not attach importance to these seeming contradictions, as this evidence is not particularly material except as to the credibility of the witness. The resolution of the fact as to whether or not the truck was in its proper lane at the time of the accident is not necessarily shown by this testimony. In fact, as we understand the opinion of the trial judge, his finding of negligence was predicated upon his deductions from the photographs. It is true Laurent testified his right dual wheel was on the shoulder, but he was doubtless mistaken in this fact since no tire marks were left. It must be recognized that the truck had nine feet of pavement to its lane of travel and was but seven and one-half feet wide, and, therefore, it was unnecessary for the right dual wheel to be over the shoulder in order for the truck to be on its side of the road. In deciding the truck was in a position over the center line, the judge a quo concluded, after his examination of the pictures showing the damage to the two vehicles, that the left one-half of the front of the automobile was in contact with the truck, implying that the truck was considerably over the center line of the highway. With this conclusion we disagree, as hereinafter pointed out.
The plaintiff herein has the onus of proof, so placed by reason of the fact that the evidence does show conclusively that his automobile at the time of impact was from six inches to a foot across the center line. A rule of law so well established that it hardly requires citation of authority holds that where a collision between two motor vehicles occurs in one of two traffic lanes, the presumption is that the driver of the vehicle determined to have been in the wrong lane was negligent, and he has the burden of showing that the collision was not caused by his negligence, or that there were justifiable circumstances which would excuse his conduct. LSA-R.S. 32:231, 232, 233, Subd. C; Hightower v. Dr. Pepper Bottling Company of Shreveport, La.App., 117 So.2d 642 (2d Cir., 1959); Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671 (1957).
*762 Other recognized legal principles applicable to the circumstances here presented are that a plaintiff has the burden of proof as to the elements of his cause of action and defendant has the burden of establishing special or affirmative defenses and cross claims; that a party is not relieved of the burden of proof by the difficulty or inconvenience of satisfying it; and that the burden of proof is satisfied by actual proof of the facts of which proof is necessary, regardless of which party introduced the evidence. 31 C.J.S. verbo Evidence, § 104, pages 712, 713, 714. As frequently pointed out in our jurisprudence, a plaintiff is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment. Roberts v. M. S. Carroll Company, 68 So.2d 689 (2d Cir., 1953).
It is our inference from the nature of the damage inflicted upon the two vehicles that such damage resulted from contact between the left frontal portions of each vehicle and the affected area was sufficiently close to the edge of each that the vehicles succeeded in passing each other with a glancing blow, which, however, caused damage to the entire left side of each from front to rear as far back as the door of each vehicle. Both vehicles came to rest in the ditch on their respective sides of the road. In our opinion, had the automobile and truck so collided that one-half of the frontal part of the automobile was involved in the initial impact, the two vehicles would not have passed each other to the left, but necessarily the forward progress of each would have been arrested.
For these reasons we are impelled to the conclusion that plaintiff has not borne the onus of proof required by law to establish as a fact that the truck was outside of its lane of travel at the time of the impact. The trial judge assumed Bryant, due to his desire for protection of his own life, would not have carelessly permitted his automobile to invade the lane reserved for travel by the truck, and, reasoning further, he infers that there must have been some misconduct on the part of the truck driver that caused the deceased to apply his brakes with the result that this latter action was the cause for the left front wheel of the automobile crossing the center line of the highway. This conclusion ignores the possible presence of a number of other factors which could have caused the automobile to take the course it did. These may or may not have involved negligence on the part of the deceased.
For the reasons hereinabove set forth, the judgment from which the defendants have appealed is annulled, reversed and set aside, and plaintiff's demands are rejected at her cost.